KATE LOGAN, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals. Argued and Submitted April 3, 1912. Opinion Filed May 7, 1912. Motion for Rehearing Overruled and Opinion Modified and Refiled July 2, 1912.

1. RELEASES: Rescission: Pleading. A release which was fraudulently or wrongfully procured from the plaintiff may be attacked by the reply, as provided by section 1812, Revised Statutes 1909, or may be set up in the petition as an anticipated defense and there attacked.

2. ————: ————: Sufficiency of Evidence. In an action for personal injuries, where defendant pleaded a release in the answer, and plaintiff, in the reply, set up that the release was fraudulently procured while she was in such a mental condition that she did not understand what she was signing, *held*, that the evidence was sufficient to warrant submission to the jury of the issue raised by the reply.

3. **APPELLATE PRACTICE: Conclusiveness of Verdict: Improbable Evidence.** Where there is evidence to support the verdict of a jury, the appellate court has no right to interfere with it on the ground such evidence is improbable.

4. **EVIDENCE: Personal Injuries: Possible Causes for Condition.** In an action for personal injuries, which were chiefly of a nervous character, the exclusion of evidence, that plaintiff had separated from her husband on account of his habits of drink, was harmless, although plaintiff's physician had testified that such a separation might have affected her nervous condition, inasmuch as there was no showing or offer to show when the separation occurred nor how long it continued and hence nothing to connect it with the nervous condition for which damages were sought.

5. **STREET RAILWAYS: Injuries to Passenger: Explosion in Controller Box: Panic Among Passengers: Instructions.** In an action against a street railway company for injuries received by a passenger in being thrown between the seats of a street car by other passengers, who, with plaintiff, were endeavoring to escape from the car on account of fear of injury, caused by fire and smoke from explosions in the controller box, an instruction, summarized in the opinion, *held* to be based upon substantial evidence and within the allegations of the petition.

6. ————: ————: ————: ————: **Proximate Cause.** In an action against a street railway company for injuries received by a passenger in being thrown between the seats of a street car by other passengers, who, with plaintiff, were endeavoring to escape from the car on account of fear of injury, caused by fire and smoke from explosions in the controller box, where it appeared that the motorman failed to take steps to stop the car, after the explosion, until it had run several blocks, *held* there was a causal connection between the explosions and the panic among the passengers, and between the explosions, the fire, smoke and alarm and the alleged negligence of the motorman in failing to stop the car.

7. **DAMAGES: Personal Injuries: Amount of Recovery.** In an action for personal injuries, where it appeared that, as a result of her injury, plaintiff was compelled to give up her work which paid her twenty-five dollars per week, and that her nervous condition, resulting from her injury, had necessitated her confinement in a hospital for sixteen weeks, at an expense to her of seven dollars and fifty cents per week, *held* that a verdict for $800 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*Boyle & Priest* and *George T. Priest* for appellant.

The court erred in overruling defendant's demurrer to the evidence and sending the case to the jury, because there was no evidence of any probative value tending to show that plaintiff was of unsound mind at the time the release in question was executed; her bald statement to the effect that she did not know she signed it is so outrageously against the conscience it raises no issuable fact. Lange v. Railroad, 151 Mo. App. 500; Spiro v. Railroad, 102 Mo. App. 250; Lomax v. Railroad, 119 Mo. App. l. c. 198.

*John B. Denvir, Jr.,* for respondent.

(1) This case having been submitted to the jury under proper instructions, the court having found in favor of plaintiff and the motion for a new trial having been overruled by the trial court, the verdict is conclusive in this court. Bank v. Beck, 140 S. W. 672; Linderman v. Carmin, 142 Mo. App. 525. (2) The court did not err in excluding testimony. Moreover, if the court did err, the defendant is not in a position to take advantage of the court's error because it made no offer of proof. Berthold v. O'Hara, 121 Mo. 88; Imboden v. Trust Co., 111 Mo. App. 220.

STATEMENT.—This is an action to recover damages for injuries alleged to have been sustained by plaintiff while a passenger on a street railway car, owned and operated by defendant on its line of railway in the city of St. Louis.

The petition in the case, setting out the fact of plaintiff being a passenger, avers that when the car was proceeding east on Washington avenue in the vicinity of Ewing avenue, the car being propelled by electricity, "there were sudden, violent and unusual explosions in the controller box or other machinery,

appliances or equipment of said car, due to the negligence and carelessness of the defendant in the care or operation of said car; that flames and smoke shot back into said car from said controller box or other machinery, appliances and equipment on said car, burning and choking passengers thereon, and setting fire to the front portion thereof; that the motorman in charge of said car (a servant and employee of defendant) retreated into said car and negligently and carelessly failed to turn off the electric power or apply the brakes to said car, until it had run several blocks, thereby permitting said explosion, fire and smoke to continue to occur. That the conductor in charge of said car (a servant and employee of defendant) likewise negligently and carelessly failed to turn off the electric power or apply the brakes or to use any effort to stop said car, and after said car had stopped, to open the doors of said car, which had to be broken open, without the assistance of said conductor. That in consequence of the premises, plaintiff and other passengers on said car, being in positions of apparent and imminent peril, endeavored to escape therefrom; that in doing so, plaintiff owing to the flames, smoke, the crowded condition of said car and the excited condition of the passengers thereon, caused by the carelessness and negligence of defendant as aforesaid, was thrown or pushed between the seats of said car; that plaintiff subsequently got as far as the door of said car and then lost consciousness; that when she recovered consciousness she was seated on the ground by a fence; that plaintiff's head was severely bruised, her arm and back severely bruised and sprained, and her nervous system greatly and permanently injured and shocked. That plaintiff was confined to the hospital for a period of, to-wit, sixteen weeks; that she has been incapable of pursuing her ordinary avocation, which is that of laundress, since the date of said injury, and is unable to pursue regularly any avoca-

tion at the time of the filing of this suit." Charging that her injuries are permanent and her earning capacity greatly diminished, if not entirely destroyed, and that she had incurred expense to the amount of $250 for hospital services, medicine, medical attention and nursing, and will be obliged to incur expense for medicine in the future and that she still suffers and in the future will suffer great pain of body and mind because of the injuries brought about by the carelessness and negligence of defendant, she has been damaged in the sum of $10,000, she demands judgment for that sum.

The answer, after a general denial, sets up a release claimed to have been executed by the plaintiff the day following the accident. This release purports to be in consideration of fifteen dollars paid plaintiff.

The reply, denying the allegations of the answer, sets up that on the morning of the day that plaintiff was injured, an agent of the defendant called on plaintiff with reference to the injuries; that at that time she was in the deepest distress and bodily pain, her nervous system unstrung and her mind wandering; that she required the assistance of eyeglasses to read and did not have any eyeglasses at hand at that time; that if she signed the release as set forth in the answer, she was unable to understand and did not understand the contents thereof or what she was doing, on account of her physical and mental condition, and that if the release set out was procured from her, it was wrongfully and fraudulently procured while she was in that condition; that while the agent of defendant gave or left with plaintiff or someone for plaintiff, an order on the treasurer of defendant for fifteen dollars, plaintiff was not conscious and had no recollection of that transaction; that she had never cashed the check or order or received any money therefor, and averring tender of the check or order to defendant before filing the suit, defendant's refusal to ac-

cept it and readiness of plaintiff at all times to surrender it, and that as she has deposited it with the clerk of the court for the use of defendant, she again tenders it.

The testimony introduced by plaintiff as to the facts attendant upon the accident was substantially as set out in the petition.

Plaintiff herself testified that overcome by the panic and by fright, and by the smoke in the car, she lost consciousness and when she came to herself she was sitting on the curb of the street and was taken by someone to a doctor's office. Attempting to go to her place of employment, she became very sick and vomited, but reached her home; did not remember going to bed or getting up the next morning, nor going downstairs. The first time that she remembers anything as occurring the day following the accident, was when her sister called the afternoon of that day and asked her if she did not want to see the doctor. After her sister suggested that, she went upstairs and went to bed. In a day or two she went to a hospital. Asked if she remembered a representative or claim agent of defendant calling on her in the morning of that day, she said she did not. Asked if she remembered signing a release or anything of that kind, she said she did not. She identified her signature to a paper which was shown to her and afterwards produced in evidence, and is the release pleaded, but she denied in the most positive terms any recollection of ever having seen or talked to the agent of defendant who procured her signature to the release, and denied, both on cross and redirect examination and in the most positive manner, any recollection of ever having signed or assented to it. It is dated the 6th of March, 1909, and is witnessed by a fellow employee of plaintiff and by the representative of defendant who was there making the settlement. No money was paid plaintiff under this release but a check for fifteen dollars was

given her which she had never cashed. Plaintiff further testified that she was forty-four years old, and is married, but while now living with her husband, had been separated from him. She was confined to the hospital about sixteen weeks; had contracted for her own board there, some seven dollars and fifty cents a week; had been obliged to give up all employment; had been earning about twenty-five dollars per month as laundress.

On the part of defendant, the agent who had represented its claim department in obtaining the release, testified very minutely and positively to all the transactions connected with the release and the conversation with plaintiff, in which he testified that she had told him about the accident and what had occurred and what she had done subsequently to it; about her visit to the physician, etc.

The physician who attended plaintiff testified to her objective symptoms and that she presented the appearance of a woman under considerable depression, appeared greatly depressed and quite nervous; that was all that the objective symptoms disclosed. The physician stated that if allowed he could state the subjective symptoms but on objection he was not allowed to do so. Plaintiff was under his care two or three months, he treating her for extreme nervousness and the results of nervousness. On cross-examination the physician testified that he had first attended the plaintiff some three or four days after the accident; found no bruises or contusions and no objective external symptoms of injury; did not examine the condition as to her nervous system at first but at various times afterwards he did and described how he had tested this. Asked by counsel for the defendant if the nerve disorder might be due to either a physical or mental condition, he answered; "in a general way, yes." He was then asked this question: "Suppose the evidence shows

that such a woman as Mrs. Logan is, has had considerable difficulty with her husband, growing out of his habits of drink and had become separated from him, could that not have a tendency of making her depressed or nervous?" He answered, "That would be a mere matter of opinion; I would say, yes, that it could."

Plaintiff, recalled for further cross-examination by defendant, was asked, "Mrs. Logan, your separation from your husband grew out of his habits of drink, didn't it?" She answered, "Yes, sir." Following that this appears: "Plaintiff's counsel objects to the question as incompetent; objection sustained, and answer stricken out." To this the defendant duly saved exception. At the time of the trial plaintiff and her husband were living together.

At the close of plaintiff's testimony in chief, defendant asked an instruction that under the law and evidence plaintiff could not recover. This was refused and defendant excepted. At the close of all the testimony counsel for defendant moved that plaintiff be required to elect on which of her defenses set up in the reply she would rely. The court stated he would govern that by instructions, to which counsel for defendant excepted, whereupon the court stated that the only issue in regard to the reply is as to whether or not plaintiff had sufficient mental understanding at the time to know what she was signing. There was no objection or exception to this statement.

At the close of the testimony the court gave three instructions asked by plaintiff, the first covering the case as to the alleged facts of the accident and alleged negligence of the defendant's employees, as to which the court instructed the jury that if they were proven, it would entitle plaintiff to recover. The second told the jury that if they found that the paper read in evidence as a release was signed by plaintiff

when she was in such a mental condition through pain and sickness, that she could not and did not comprehend or understand its contents, and that defendant's agent was aware of plaintiff's condition and induced her to sign the release while in that condition, and that owing to such mental condition plaintiff did sign the release without understanding or being able to understand its contents, and if they found that plaintiff had tendered the check or an order to defendant prior to the institution of the suit, they should find for plaintiff provided they further found that the injuries sustained by plaintiff, if any, were due to the negligence of defendant, as referred to in the first instruction. The third instruction is as to the measure of damages.

At the instance of defendant the court instructed the jury, first, that if they found from the evidence that plaintiff at the time she signed the release in evidence was of sound and contracting mind, their verdict must be for defendant. Second, that the jury are not to take the fact that there had been a settlement in this case as any admission of any liability on the part of defendant.

Of its own motion the court instructed the jury properly as to the credibility of witnesses and as to the number of jurors required to return a verdict. This first instruction was in lieu of one asked by defendant, imperfectly covering the same matter.

The jury returned a verdict for plaintiff in the sum of $800, and defendant, interposing a motion for new trial and saving exception to that when it was overruled, has duly perfected appeal to this court.

REYNOLDS, P. J. (after stating the facts).— The errors assigned by counsel for apepllant are: First, to the overruling of defendant's demurrer to the evidence on the ground assigned that there was no evidence of any probative value tending to show

that plaintiff was of unsound .mind at the time the release in question was executed, it being argued that her bald statement, to the effect that she did not know she had signed it, is so outrageously against the conscience that it raises no issuable fact; second, that the court erred in excluding the question and answer before set out as asked the plaintiff, which, to repeat it, was, "Mrs. Logan, your separation from your husband grew out of his habits of drink, didn't it? A. Yes, sir." The third assignment of error is that the court erred in giving plaintiff's first instruction. The fourth is that the verdict is excessive.

We are unable to agree that the first assignment is tenable. A release, "when fraudulently or wrongfully procured from plaintiff," can be attacked by the reply, as provided by section 1812, Revised Statutes 1909, or, as held by the Supreme Court in Berry v. St. Louis & S. F. R. Co., 223 Mo. 358 (122 S. W. 1043), where at page 369 the remarks of Judge MARSHALL in Courtney v. Blackwell, 150 Mo. 245, l. c. 278, 51 S. W. 668, are quoted approvingly, and as intimated by our court in Carroll v. United Railways Co., 157 Mo. App. 247, l. c. 295, 137 S. W. 303, it may be set up as an anticipated defense in and by the petition and there attacked. Taking up plaintiff's own testimony as to the accident and her description of her acts and mental condition immediately subsequent to it, and on the day following, on which latter date this release was signed, as well as the undisputed testimony of the physician as to her nervous condition, for a long period following, we see nothing to warrant us in holding that her testimony, that she did not know she had signed the release, "is so outrageously against the conscience it raises no issuable fact." To the contrary, we see nothing improbable in it. If we did think it improbable, we are concluded by the verdict of the jury, who, under very carefully drawn instructions as to that issue, found against the defendant.

This is not such a case as those referred to in Spiro v. St. Louis Transit Co., 102 Mo. App. 250, 76 S. W. 684; Lomax v. Southwest Missouri Electric R. Co., 119 Mo. App. 192, 95 S. W. 945, or Lange v. Metropolitan St. R. Co., 151 Mo. App. 500, 132 S. W. 31. In the Spiro and Lange cases the court was dealing with physical facts. In the Lomax case the court (l. c. 198) said, "The charge of fraud should have been supported by satisfactory evidence and not left to rest, as here, upon mere surmise and conjecture." In the case before us, the evidence that the release had been procured from plaintiff "fraudulently" (using that word in its technical sense) or "wrongfully," either of which is sufficient under section 1812 to avoid it, was supported by evidence that the jury certainly held to be satisfactory, and which we, as an appellate court, not seeing and hearing the witnesses who gave it, certainly cannot hold, in the light of that finding, to be either unsatisfactory or to rest on mere surmise and conjecture. Our court, in McClanahan v. St. Louis & S. F. R. Co., 147 Mo. App. 386, l. c. 409 *et seq.,* 126 S. W. 535, on the authority of many cases there cited, has gone very far in holding that a verdict resting on testimony opposed to known physical facts cannot stand. Here we, as an appellate tribunal, are, and the jury and learned trial judge were, dealing, not with physical facts but a mental condition. The plaintiff described her mental condition, more accurately, her lack of conscious mentality, very fully. The existence of that mental condition must rest so entirely in the statements of the party so affected that it is difficult for a third party, an outside party, to undertake to enter into it; in truth, it is impossible to do so. It is so far subjective and personal that the establishment of it one way or the other rests almost entirely on the credit that is to be given to the party so testifying. In the case at bar the plaintiff was before the jury; so was the agent of defendant. No

one who was present when the agent claims to have
had the conversation with plaintiff testified as to that
conversation.   The subscribing witness was called in
and all she testified was that when asked to do so, she
signed her name as a witness.   The truth of the mat-
ter lay between plaintiff and the agent.   The jury
heard both; saw them; had the opportunity to weigh
the testimony of plaintiff and to contrast it with the
testimony given by the claim agent.   They had before
them the testimony of the attending physician as to the
high nervous tension under which plaintiff labored
immediately following and for a long period after
the accident.   They were properly instructed by the
court as to the facts necessary to overthrow the re-
lease, not only by instruction given at the instance of
plaintiff but by the very clear one given at the in-
stance of defendant itself.   Hence this question of
mental condition, that is, of sufficient mental condi-
tion to know and understand what the plaintiff was
doing at the time the release purported to be signed,
having been properly submitted to the jury, its solu-
tion was with them, subject to the controlling super-
vision of the learned trial court.   We are unable, if
we were even disposed to do so, to disturb the finding
on this point for this reason.

We are unable to concur with the contention of
learned counsel for appellant as to their second as-
signment of error, that the exclusion of the testimony
of plaintiff that the separation from her husband grew
out of his habits of drink, is reversible error.   When
the court struck out the answer which plaintiff had
given to this question, the matter ended there.   While
it was possibly error to have excluded this answer,
we cannot believe that its exclusion under the circum-
stances affected the verdict of the jury to such an ex-
tent as to demand either reversal or cutting down
of the amount of damages awarded.   The jury fixed
the damages at $800.   Counsel for appellant contend

that even if respondent was entitled to recover, $400 would be more than ample remuneration for any injuries sustained. Even if the answer of respondent, that her separation from her husband grew out of his habits of drink, had been permitted to stand in connection with the testimony of the physician that difficulty with her husband might have contributed to her nervous condition, there was no offer or attempt to show when that difficulty occurred or how long it continued; whether before or after the confinement of respondent in the hospital. All that the physician said when asked if the nervous condition of respondent might be due to either a mental or physical condition, was, "In a general way, yes." When asked if the evidence showed that Mrs. Logan had had considerable difficulty with her husband, growing out of his habits of drink, and had been separated from him, whether that could not have a tendency to make her depressed and nervous, he answered, "That would be a matter of opinion; I would say yes that it could." We do not think that even with the answer of respondent remaining, the jury would have any substantial facts warranting them in assuming that this respondent was in truth rendered so nervous from her domestic relations as to send or keep her in the hospital; not even that this contributed to her then condition.

The third point argued by counsel is that the first instruction allowed a recovery on account of the continued explosions and for failure to bring the car to a stop, "when there was absolutely no causal connection between the continued explosions and the failure to bring the car to a stop." The fairest way to answer this is to summarize that instruction so far as it relates to the facts of the accident.

It, in substance, told the jury that if they found that while plaintiff was a passenger on the car there were sudden, violent and unusual explosions in the

controller box; that these explosions were followed by flames, fire and smoke in the car; and that the explosions, flames, fire and smoke were such as to fill with terror of immediate injury or death any reasonably prudent person who was a passenger upon the car; and that plaintiff became so alarmed and filled 'with fear and terror of immediate injury or death, and was injured by being thrown and pushed between the seats of the car while 'endeavoring to escape from such apparent and immediate danger, along with other passengers in the car similarly alarmed and likewise endeavoring to escape therefrom; and that the agents and servants of defendant, in permitting said explosions, flames and smoke to continue for the time mentioned in the evidence—if the jury believe they did so permit—or in failing to bring the car to a stop before the time mentioned in the evidence—if the jury believe they so failed—were guilty of negligence, "that is that they did not exercise therein the highest degree of care and skill that could be reasonably expected of prudent and skillful men under the same or like circumstances," and that plaintiff sustained the injuries as theretofore defined, as a direct result of such negligence of said employees —then plaintiff could recover unless the jury found that the release prevents her recovery. The instruction as to the release followed and is not complained of as to form.

We see no occasion to condemn this instruction; it was based on substantial evidence and is within the petition. We cannot agree that there was no causal connection between the several explosions and the panic; between these explosions, the fire, smoke and alarm and the alleged negligence in failure to stop.

As to the fourth point made, that the verdict is excessive, we do not think, in the light of the testimony as to the character of the injury, the amount of expense to which plaintiff was put, her earning ca-

pacity, her present condition, that this verdict is excessive.

On consideration of the whole record in the case we find no reversible error. The judgment of the circuit court as heretofore ordered is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.